# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Rebecca Taufen,                                         Civil No. 12-2050 (DWF/JJG)

        Plaintiff,

v.                                                               **MEMORANDUM**
                                                                  **OPINION AND ORDER**
Messerli & Kramer, P.A.,

        Defendant.

---

Thomas J. Lyons, Jr., Esq., Consumer Justice Center P.A., counsel for Plaintiff.

Derrick N. Weber, Esq., and Jennifer M. Zwilling, Esq., Messerli & Kramer, P.A., counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendant Messerli & Kramer, P.A. ("Defendant") (Doc. No. 23), and a Motion for Partial Summary Judgment brought by Plaintiff Rebecca Taufen ("Plaintiff") (Doc. No. 53.)  For the reasons set forth below, the Court denies Plaintiff's motion and grants in part and denies in part Defendant's motion.

## BACKGROUND

The facts of this case were previously set forth in the Court's March 14, 2013 Order granting in part and denying in part Defendant's motion to dismiss.  (Doc. No. 17.) The Court briefly summarizes and supplements the relevant facts below.[1]

Plaintiff incurred consumer debt with Capital One Bank ("Capital One").  (Doc. No. 48, Second Am. Compl. ¶ 6.)  Plaintiff retained a debt consolidation law firm, Macey, Aleman, Hyslip & Searns (the "MAHS law firm"), to represent her with respect to Capital One's claim for the alleged debt.  (*Id.* ¶ 8.)  The MAHS law firm sent Capital One letters of representation on June 10, 2011 and July 27, 2011.  (*Id.* ¶ 9; Doc. No. 31 ("Lyons, Jr. Decl.") ¶ 2, Ex. 1 ("Cunningham Decl.") ¶ 8.)  Plaintiff requested in writing that Capital One "cease and desist" all communications with her.  (Cunningham Decl. ¶ 8.)

Sometime prior to January 12, 2012, Capital One transferred or assigned the alleged debt to NCO Financial Systems, Inc. ("NCO") for collection.  (Second Am. Compl. ¶ 10; Cunningham Decl. ¶ 12.)  At the time, Capital One provided NCO with all

---

[1]   On August 15, 2013, Magistrate Judge Jeanne J. Graham granted in part and denied in part Plaintiff's Motion to Amend the Amended Complaint.  (Doc. No. 46.) Specifically, the Magistrate Judge granted Plaintiff's motion to add claims against Defendant, but denied Plaintiff's motion to add a defendant.  (*Id.*)  Plaintiff filed her Second Amended Complaint on August 21, 2013.  (Doc. No. 48.)  The Court requested additional briefing by the parties to update their respective arguments on summary judgment in light of the Second Amended Complaint.  (Doc. No. 50.)  The parties submitted additional briefing, and Plaintiff subsequently filed the pending motion for partial summary judgment.

account information related to Plaintiff's Capital One account (the "Account"), including the fact that Plaintiff's Account contained the code "C070127A."  (Second Am. Compl. ¶ 11; Cunningham Decl. ¶ 15.)  Plaintiff asserts that this code is assigned by NCO and is recognized by firms to mean the case has been classified as a "cease and desist."  (Second Am. Comp. ¶ 11; Cunningham Decl. ¶ 15.)

NCO placed the Account with Defendant to collect.  (Cunningham Decl. ¶ 16.) Defendant received Plaintiff's Account on January 16, 2012.  (Doc. No. 28 ("Zwilling Decl.") ¶¶ 4-5 & Ex. 1.)  Plaintiff alleges that NCO forwarded all account information to Defendant.  (Second Am. Compl. ¶ 12.)

On January 17, 2012, Defendant sent a collection letter to Plaintiff.  (*Id.* ¶ 13.)  On February 2, 2012, Plaintiff sent Defendant a letter advising, in part, that if "any action is taken which could be considered detrimental to any of my credit reports, I will consult with my legal counsel for suit."  (Zwilling Decl. ¶ 6, Ex. 2.)  On February 7, 2012, Defendant sent another collection letter to Plaintiff.  (Second Am. Compl. ¶ 17; Zwilling Decl. ¶ 7, Ex. 3.)

On January 18, 2012 and January 24, 2012, Defendant contacted Plaintiff via telephone.  (Zwilling Decl. ¶¶ 8-9 & Ex. 4.)  Plaintiff originally alleged that she attempted to advise Defendant's collection agent that she was represented by an attorney while on the phone, but that the agent cut her off, said "I don't want to hear about your attorney," and continued to demand payment.  (Doc. No. 15, Am. Compl. ¶¶ 16-17.) Those allegations are not in the Second Amended Complaint.  In addition, the recordings of the two phone conversations reveal that Plaintiff did not inform Defendant that she

was represented by an attorney or that Defendant said, "I don't want to hear about your attorney."  (Zwilling Decl. ¶ 8, Ex. 4.)

The content of the January 18, 2012 and January 24, 2012 phone calls is transcribed as follows:

[January 18, 2012]

**Plaintiff:**      Hello?
**Defendant:**   Yea, is Rebecca around?
**Plaintiff:**      I'm sorry?
**Defendant:**   I said is Rebecca around?
**Plaintiff:**      Yea, this is.
**Defendant:**   Yea, this is Chris calling from Messerli & Kramer, the law firm for Capital One.  And we're calling to see if we are going to be able to resolve this voluntarily.
**Plaintiff**:      This was all turned over and I was doing . . . working with a debt consolidation.
**Defendant**:   Well, obviously they didn't do a very good job because it ended up in our office.
**Plaintiff:**      Well, I guess I'll have to contact them and see what is going on.
**Defendant:**   So, you want me to let the attorneys know you are not interested in resolving this voluntarily then?
**Plaintiff:**      Not right at the moment.  How much is owing?
**Defendant:**   Right now it is $3,554.19.
**Plaintiff:**      And that's the total?
**Defendant:**   Um hum.
**Plaintiff:**      Ok. I'll have to get ahold of them.  What's your number?
. . .

(Zwilling Decl. ¶ 9, Ex. 4.)

[January 24, 2012]

**Plaintiff:**      Hello?
**Defendant:**   Yea, is Rebecca around?
**Plaintiff:**      Yep, this is.
**Defendant:**   Yea, this is Chris calling from Messerli & Kramer, the law firm for Capital One.  And we're calling to see if we are going to be able to resolve this voluntarily.

**Plaintiff:**     Ah, nope.  I'm going to keep working with my debt relief people.

**Defendant:**   Well, they are not calling anybody to resolve this.

**Plaintiff**:     Yep, I know.

**Defendant**:   They are not relieving your debt.  They are just taking your money.

**Plaintiff:**    I've talked to them about it.

**Defendant:**   Well, they haven't called us and we're the ones they need to call so . . .

**Plaintiff:**    Yep, well, they will be, so I am confident that it'll get worked out.

**Defendant:**   They haven't.  They've had eight days since we spoke last week.  And they haven't called.

**Plaintiff:**    Right.

**Defendant:**   It kinda sounds like to me they are not doing anything about this.  Isn't that what it would sound like to you?  They've had eight days to call.

**Plaintiff:**    Umm, yea well, they are working on other debts first.  So, and that's how it works.

**Defendant:**   We're not going to be waiting around for that.  This is set to be reviewed for suit in February so  . . .

**Plaintiff:**    All right, well.

**Defendant:**   It doesn't sound like you care.  So is that basically what I should tell the . . .

**Plaintiff:**    Well, I do care.  What do you want me to do about it?  Mean, pull the money out of my *** or what?

**Defendant:**   Pay your, pay your bill.

**Plaintiff:**    Where would you like me to get the money from?

**Defendant:**   That's up to you.  It's your bill.

**Plaintiff:**    Yea, well, I don't have the money.  So, I can't obviously pay it.

**Defendant:**   Okay, what are you doing to try to come up with it?

**Plaintiff:**    Can you tell me what business it is of yours?

**Defendant:**   Yes, because you owe the client we represent $3,554, that's why it's our business.

**Plaintiff:**    Okay, well I was unemployed for two years and I just got a job, so I am trying to work so I can pay off my bills.  There was nothing I could do about being unemployed.

**Defendant:**   You have a job, but you are not paying your bills so . . .

. . .

(*Id.*)

In her Second Amended Complaint, Plaintiff alleges a single count for multiple violations of the Fair Debt Collection Practices Act ("FDCPA").  Specifically, Plaintiff alleges that Defendant:  (1) violated section 1692e(11) by failing to provide statutorily required disclosures; (2) violated section 1692c(a)(2) by communicating with Plaintiff after learning that Plaintiff was represented by legal counsel and by failing to investigate the identity of Plaintiff's legal counsel; (3) violated section 1692c(c) by communicating with Plaintiff after Plaintiff indicated that she wished all communication to cease; and (4) violated section 1692f during the phone calls when Defendant's collection agent cut Plaintiff off and continued to demand payment from Plaintiff.  (Second Am. Compl. ¶¶ 28-30.)

## DISCUSSION

### I.    Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Motions for Summary Judgment

### A.     Section 1692e(11)

Plaintiff alleges that Defendant violated section 1692e(11) during both the January 18, 2012 and January 24, 2012 phone calls between Defendant and Plaintiff. Both parties move for summary judgment on this claim.

Section 1692e(11) of the FDCPA requires a debt collector to state that it is a debt collector in all communications with consumers. *See* 15 U.S.C. § 1692e(11). Specifically, 15 U.S.C. § 1692e(11) states:

> [T]he following conduct is a violation of this section: . . . The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).  When interpreting section 1692e(11), the Court uses the "unsophisticated consumer" standard.  *See Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004).  This standard is designed to protect consumers of below average sophistication or intelligence, but also contains an objective element of reasonableness.  *Id.*

Defendant sent Plaintiff a letter dated January 17, 2012, indicating that Defendant was seeking to collect a debt on behalf of Capital One.  Defendant claims that this constitutes the "initial communication" with Plaintiff and that the letter complies with section 1692e(11) because the letter identified that it was a law firm representing Capital One for Plaintiff's unpaid Capital One Account, that it was from a debt collector in an attempt to collect the debt, and that any information obtained would be used for that purpose.  Defendant further claims that its January 2012 telephone communications, in conjunction with its January 17, 2012 letter, effectively conveyed that the communication was from a debt collector.  Plaintiff does not dispute the content of the January 17, 2012 letter, but submits there is no evidence that Plaintiff received the January 17, 2012 letter prior to the January 18, 2012 phone call, thus casting doubt on whether the January 17 letter was the "initial communication."  Plaintiff submits evidence that when Defendant called her on January 18, 2012, she was not expecting to be contacted by Defendant and was unaware that they were calling to collect on her debt.  (Doc. No. 56 ("Lyons, Jr. Decl. II") ¶ 2, Ex. 1 ("Taufen Dep.") at 50-51.)

The Court concludes that fact issues remain with respect to Plaintiff's claim under section 1692e(11).  First, fact issues exist as to what constitutes the initial

communication—the January 17, 2012 letter or the January 18, 2012 phone call.  If a fact

finder were to determine that the January 18, 2012 phone call was the initial

communication, that fact finder could also reasonably conclude that Defendant failed to

identify itself as a debt collector, inform Plaintiff that the conversation was an attempt to

collect a debt, and explain that any information Plaintiff provided would be used to

collect the debt.  While Defendant's representative stated "this is Chris calling from

Messerli & Kramer, the law firm for Capital One" and that he was "calling to see if [the

parties were] going to be able to resolve this voluntarily," to an unsophisticated customer,

this information could be vague as to whether the call was from a debt collector and what

specifically the caller was seeking to resolve.  Plaintiff correctly points out that an

unsophisticated customer, who could have multiple accounts or debts, may not

understand why a law firm would be contacting her.  Thus, fact issues remain and

preclude summary judgment on this claim for either party.

     The Court also notes that if a jury were to conclude that the January 17, 2012 letter

was the initial communication (and there appears to be no dispute that it complies with

section 1692e(11)), the jury will have to decide whether the January 18, 2012 and

January 24, 2012 phone calls complied with the requirements for subsequent

communications under section 1692e(11), namely that the caller disclose that the call is

from a debt collector.  *See* 15 U.S.C. § 1692e(11).  Here, the caller indicated at the

beginning of each call that he was "calling from Messerli & Kramer, the law firm for

Capital One . . . to see if [the parties were] going to be able to resolve this voluntarily."

9

A jury will decide whether this communication adequately disclosed that the call was from a debt collector, and therefore, whether these calls violate section 1692e(11).

### B.      Section 1692c(a)(2)

Plaintiff alleges that Defendant violated section 1692c(a)(2) by communicating with Plaintiff despite knowing that she was represented by an attorney.  Defendant argues that this claim fails as a matter of law because Defendant did not have actual knowledge of Plaintiff's representation.

Section 1692c(a)(2) provides in part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . .

15 U.S.C. § 1692c(a)(2).

Plaintiff originally argued, in opposition to Defendant's first motion for summary judgment, that Defendant's January 17, 2012 and February 7, 2012 letters violated section 1692c(a)(2) because the cease and desist code in the files indicated legal representation.  In her supplemental memorandum on the motion before the Court, Plaintiff focuses on her claim under section 1692c(c).  Even so, the Court addresses Plaintiff's section 1692c(a)(2) claim below.

A debt collector must have actual knowledge of a debtor's representation under the FDCPA.  *See Schmitt v. FMA Alliance*, 398 F.3d 995, 997-98 (8th Cir. 2005) (holding that a plaintiff must plead actual knowledge of representation under the FDCPA to state a

claim upon which relief may be granted).  The parties dispute whether Defendant had

actual notice of representation.  Plaintiff argues that the record shows that Capitol One's

knowledge of Plaintiff's legal representation was disclosed and incorporated into

Plaintiff's account information via the "cease and desist" code.  Plaintiff asserts that this

code was provided to Defendant when Plaintiff's Account file was transferred, and that

Defendant would have understood the meaning of the code.  Defendant submits a copy of

all of the Account information it received for Plaintiff's delinquent Capital One Account.

(Zwilling Decl. ¶ 5, Ex. 1.)  These documents contain the "C070127A" code, which

Plaintiff asserts would be understood by Defendant as an indication that the Account had

been classified as a "cease and desist."[2]  The file data, however, did not provide notice of

attorney representation.  (Cunningham Decl. ¶ 14.)

　　　The Court concludes that there is no evidence in the record, and particularly in the

Account files given to Defendant, that would have indicated to Defendant that Plaintiff

was represented by an attorney.  While the MAHS law firm apprised Capital One of its

representation of Plaintiff, Capital One did not provide any information to Defendant

indicating that Plaintiff was represented by an attorney.  Nor is there any support for the

_____

[2]　　　Plaintiff submits the Declaration of Sarah Cunningham, a senior operations
manager at Capital One, who attaches the account records relevant to Plaintiff's Capital
One Account.  (Cunningham Decl. ¶¶ 4-7, Ex. A.)  After the Account was charged off,
Capital One provided the Account information to NCO.  (Id. ¶ 12.)  The Account
information contained the code—C070127A—indicating that Plaintiff's account was
classified by Capital One as "cease and desist."  (Id. ¶ 15.)  Plaintiff contends that this
data was then forwarded to Defendant and that, on information and belief, the "cease and
desist" code "would be recognized by firms as an indication that" Plaintiff's account had
been classified as "cease and desist."  (Id.)

claim that attorney representation is implicit in the "cease and desist" code.  Therefore, no reasonable juror could conclude that Defendant violated section 1692c(a)(2) with respect to its January 2012 communications with Plaintiff.

Plaintiff also argues that Defendant's February 7, 2012 letter to Plaintiff violates section 1692c(a)(2) because Defendant failed to "investigate and/or communicate with Plaintiff's legal counsel."  (Second Am. Compl. ¶ 19.)  Plaintiff sent Defendant a letter on February 2, 2012, which stated in part:  "during this validation period [of my Capital One debt], if any action is taken which could be considered detrimental to any of my credit reports, I will consult with my legal counsel for suit."  (Zwilling Decl. ¶ 6, Ex. 2.)  Plaintiff submits that this letter was sufficient to trigger section 1692c(a)(2), which requires that a debt collector cease communication with a debtor if it "knows the consumer is represented by an attorney *and* has knowledge of, or can readily ascertain, such attorney's name and address."  15 U.S.C. §1692c(a)(2) (emphasis added).

Even if the Court were to conclude that a reasonable juror could find that the February 2, 2012 letter indicated that Plaintiff was represented by an attorney, there is no evidence that the information in the letter would have allowed Defendant to readily ascertain Plaintiff's attorney's name and address.  While the letter mentions that Plaintiff would "consult with my legal counsel for suit," Plaintiff never identifies the attorney to who she is referring and, significantly, requests that all future communications be sent to Plaintiff's address.  (Zwilling Decl. ¶ 6, Ex. 2.)  The Court concludes, therefore, that at the time Defendant sent the February 7, 2012 letter, Defendant was under no obligation,

as a matter of law, to attempt to identify the unnamed "legal counsel for suit" in Plaintiff's February 2, 2012 letter.

For the above reasons, Defendant is entitled to summary judgment with respect to Plaintiff's FDCPA claims under section 1692c(a)(2).

### C.      Section 1692c(c)

Plaintiff alleges that Defendant violated section 1692c(c) by communicating with Plaintiff after Plaintiff indicated that she wished all communication to cease.  Defendant argues that this claim fails as a matter of law because Plaintiff never individually ceased communication with Defendant.

Section 1692c(c) provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . .

15 U.S.C. §1692c(c).

Defendant argues that, even if a cease and desist accompanied Plaintiff's debt when it was placed with Defendant, it had no legal effect because Defendant must be ceased individually by Plaintiff.  In support, Defendant cites to a case out of the Northern District of New York, *Micare v. Foster & Garbus*, 132 F. Supp. 2d 77, 81 (N.D.N.Y. 2001).  In *Micare*, the court held that a plaintiff's section 1692c(c) claim failed where the only alleged notice to cease communication was not sent to the defendant debt collector, but instead was sent to the creditor prior to transferring the debt to the collector.  132 F.

13

Supp. 2d at 81.  The court reasoned that the plain language of the statute required a written communication to be made directly to the debt collector being ceased.  *Id.*

While the facts of *Micare* are similar to the facts here, the case is not controlling and the Court declines to follow it in this case.  Instead, the Court concludes that if Plaintiff can establish that she notified Capital One in writing that communications should cease, that her "cease and desist" status was forwarded to Defendant when her Account was transferred for collection, and that Defendant had actual knowledge of that status, then Plaintiff could prevail on her section 1692c(c) claim.  The Court agrees with Plaintiff that requiring a debtor, like Plaintiff, to individually send letters to subsequent debt collectors to whom the debtor's account is transferred *after* sending written notification to cease communication to a prior debt collector about the same debt, and where the subsequent debt collector has actual knowledge of the cease and desist status, would be too strict of an interpretation of a remedial statute designed to protect consumers.

With this in mind, the Court concludes that, on the record before it, fact issues remain that preclude summary judgment on Plaintiff's claim under section 1692c(c).  Specifically, viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant, being in possession of the Account files with the "cease and desist" code, would have known that Plaintiff had indicated that she wished the debt collector to cease all further communication.  Unlike Plaintiff's claim under section 1692c(a)(2), which required knowledge that Plaintiff was represented, a reasonable juror could conclude, based on the evidence before the Court, that Defendant

14

understood the code as an indication that Plaintiff's Account was classified as a "cease and desist." Thus, summary judgment is denied as to Plaintiff's section 1692c(c) claim.

###    C.    Section 1692f

Plaintiff also asserts that Defendant violated section 1692f based on the behavior of Defendant's collection agent who spoke to Plaintiff on the phone during the January 18, 2012 and January 24, 2012 phone calls. Specifically, Plaintiff asserts that the collection agent cut Plaintiff off, talked over her, continued to demand payment, and made rude and condescending remarks.

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. In the March 14, 2013 Order, the Court dismissed Plaintiff's claim under 1692f without prejudice. (Doc. No. 17 at 6-7.) In doing so, the Court noted that the allegations supporting Plaintiff's section 1692f claim appeared to be the same allegations that support her claim under section 1692c(a)(2). Further, the Court found that, to the extent Plaintiff asserted that Defendant's agent cut her off and talked over her on the phone, those allegations were insufficient to state an independent cause of action. (Doc. No. 17 at 7.) Presently, Plaintiff argues that during the phone conversations, Plaintiff attempted to convey that she was working with a debt consolidation firm and that Defendant's agent responded in a rude and condescending manner.

The Court concludes, based on the phone call records, that while the caller was blunt and impolite, the content of the calls does not rise to the level of being unfair or

unconscionable.  Therefore, Defendant is entitled to judgment on Plaintiff's claim that Defendant violated section 1692f.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion for Summary Judgment (Doc. No. [23]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

      a.      Defendant is entitled to judgment on Plaintiff's Claims for FDCPA violations under sections 1692c(a)(2) and 1692f.

      b.      Plaintiff's claims for FDCPA violations under sections 1692e(11) and 1692c(c) remain for trial.

2.      Plaintiff's Motion for Partial Summary Judgment (Doc. No. [53]) is **DENIED**.


Dated:  February 19, 2014                         s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge